# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

NANCY A. BAPTISTA, individually and on
behalf of all others similarly situated,
               Plaintiffs

        v.                                C.A. No. 010-467-ML

MUTUAL OF OMAHA INSURANCE
COMPANY, UNITED OF OMAHA LIFE
INSURANCE COMPANY and DOES 1
through 100, inclusive,
               Defendants

## MEMORANDUM AND ORDER

This case was brought by Nancy Baptista ("Baptista") as a class action suit under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA") regarding the defendants' practice of administering death benefits from certain employee benefit plans insured by the defendants. A proposed settlement class (together with Baptista, the "Plaintiffs") was conditionally certified for settlement purposes pursuant to Fed. R. Civ. P. 23(b)(3). The matter before the Court is the Plaintiffs' motion for final approval of the class action settlement and their request for an award of attorneys' fees, reimbursement of costs, and an incentive award for the named plaintiff. On January 20, 2012, the Court conducted a final fairness hearing to determine whether the settlement agreement between the parties was fair, reasonable, and adequate, and to address class counsel's application for an award of attorneys' fees and costs and payment

1

of an incentive award to Baptista. For the reasons stated herein, the Plaintiffs' motion is granted, in part, and denied, in part.

### I.    Factual Background:

Baptista, a Rhode Island resident, is the beneficiary of a life insurance policy provided by her late husband's employer and issued by United of Omaha Life Insurance Company, an affiliate of Mutual of Omaha Insurance Company (together, "Mutual of Omaha"). Baptista's husband died on October 24, 2007. On December 6, 2007, Baptista submitted a death benefit claim to Mutual of Omaha. In response, on January 10, 2008, Baptista received a death benefit allowance letter from Mutual of Omaha, advising her that the benefits were placed into a Total Access Benefits Service ("TABS") Account. Baptista was informed that the account offered a "competitive interest rate,[1]" personalized checks, and easy access to her money. Complaint ¶ 20. Baptista also received a "Total Access Benefits Service Account Information Certificate," which stated that TABS is a program of Mutual of Omaha and that her "proceeds and accrued interest under the TABS account are paid by Mutual of Omaha Insurance Company." Complaint ¶ 21.

The complaint alleges that Mutual of Omaha (1) did not, as stated, transfer any funds to the TABS account when it was

---

[1]

The TABS confirmation certificate dated 01-10-08 reflects an interest rate of 2.5%, for an annual percentage yield of 2.52%, which was significantly below the then applicable prime interest rate. Ex. C to Complaint (Docket No. 1-4).

established; (2) invested the death benefits owed to Baptista "for its own account and not for the exclusive purpose of providing benefits" to Baptista; and (3) "earned more through such investments than the interest that it paid to [Baptista] in connection with her Account." Complaint ¶25, 26. The complaint further alleges that Baptista's claims are typical of the claims of a plaintiff class composed of more than 10,000 class members.[2] Baptista asserts claims of unjust enrichment, a violation of ERISA, suggesting that, under ERISA, Mutual of Omaha owed a fiduciary duty to her and other TABS account holders, and that it was, therefore, prohibited from investing the benefits for its own account and without fully accounting to Baptista (and the plaintiff class) for the monies it earned through such investments. Complaint ¶ 30. Baptista seeks disgorgement of all the moneys Mutual of Omaha earned through its allegedly unlawful practices involving TABS accounts. Complaint at 13.

The complaint includes in the proposed class any beneficiaries under ERISA-governed employee welfare benefit plans under which Mutual of Omaha "paid" death benefits through the creation of a TABS account. The class period is set "[a]t any time after the date six years immediately preceding the filing of this complaint." Complaint ¶ 33.

---

[2]

After some initial investigation, the number of prospective plaintiffs was established at approximately 6,800.

3

## II. Litigation Time Line

On November 17, 2010, Baptista filed a complaint in this Court on her own behalf and that of all others similarly situated. Baptista requested, *inter alia*, that Mutual of Omaha hold in constructive trust all monies it has earned through its practice and she also sought injunctive relief enjoining Mutual of Omaha from committing future violations of ERISA.

On January 31, 2011, Mutual of Omaha answered the complaint, asserting, *inter alia*, that the claims were barred by the statute of limitations; that the Plaintiff and other putative class members caused or contributed to the loss claimed; that the Plaintiffs' claims are barred by signed releases; and that Mutual of Omaha's actions were consistent with the applicable plan documents and ERISA. Answer at 5-6.

On March 22, 2011, the parties participated in a Rule 16 conference. In its Rule 16 statement, the Plaintiffs' counsel indicated that the parties had already "conferred and agreed to stay this litigation for 60 days in order to engage in meaningful settlement discussions" and that, "under an agreement of confidentiality, defendants had begun to share with plaintiff various documents to advance this cause." (Docket No. 21). In the course of the Rule 16 conference, the parties made a joint motion to stay the case for sixty (60) days, which was granted.

On May 23, 2011, the parties submitted a one paragraph joint

4

status report, representing that they had engaged in negotiations and were attempting to schedule a mediation towards the end of June 2011. Plaintiffs also requested that the stay be lifted since they believed that a continuance would not further negotiations. (Docket No. 23). On June 3, 2011, the parties participated in a telephone conference, where they informed the Court that a mediation of the case was scheduled in Atlanta with a mediator.

On July 27, 2011, plaintiff submitted a Notice of Unopposed Motion for Preliminary Approval of Class Settlement and to Schedule a Fairness Hearing, together with a memorandum, an affidavit, and various exhibits. (Docket No. 24). At a status conference on August 4, 2011, the parties represented that, following a one day session with a mediator on June 30, 2011, they had come to a general agreement to settle the case. The Court inquired, *inter alia*, how the parties had arrived at the settlement amount; how much time plaintiffs' counsel had spent on discovery; the extent of Baptista's involvement in the litigation, thus far; and about the appropriateness of returning any *cy près* fund to a foundation administered by Mutual of Omaha, as suggested by the parties. The Court then instructed the parties to modify the Proposed Individual Notice of Settlement, in part, to explicitly inform prospective class members (estimated at approximately 6,800 individuals) regarding a waiver of future claims, to clarify the means of opting out of the settlement and/or participating in future Court

5

proceedings regarding approval of the settlement, and to select a recipient of any *cy près* fund unaffiliated with the Defendants.

On August 11, 2011, the Court entered a stipulation by the parties that, for purposes of notice requirements under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, the proposed settlement of the class action had not yet been filed. Mutual of Omaha was directed to send out CAFA notices within ten days after filing of the Stipulation of Settlement. (Docket No. 27).

On September 28, 2011, Baptista filed an Unopposed Motion for Preliminary Approval of Class Settlement. (Docket No. 29). Plaintiffs' counsel represented, *inter alia*, that they had received extensive financial information from Defendants' counsel and that Plaintiffs' counsel had conducted substantial informal discovery regarding Defendants' financial records. It is also noted in the motion that Defendants' counsel and Plaintiffs' counsel are well acquainted since they have been litigating a similar case, and that Plaintiffs' counsel's investigation (and experience with similar cases) and review of the initial disclosures and informal discovery allowed them to review and assess the merits of the case and to recommend this settlement." (Docket No. 29 ¶ 7-8). On September 30, 2011, the Court entered an Order (1) preliminarily approving the Settlement, pursuant to which the parties agreed to settle the litigation for $1.9 Million; (2) appointing Plaintiffs' counsel as class counsel; and (3) approving the notice to class members.

(Docket No. 30).

On January 6, 2012, Baptista submitted a Motion for Approval of Attorney's Fees and Costs (Docket No. 31) and a Motion for Approval of Class Settlement (Docket No. 32). On January 13, 2012, Baptista filed an affidavit of an associate account executive with A.B. Data Ltd., the appointed Settlement Administrator responsible for providing notice to all known settlement class members.

On January 20, 2012, the Court held a hearing on the request for final approval of the settlement. Neither Baptista nor any other members of the settlement class were present. Counsel for the settlement class presented one witness, a local attorney with some involvement in class action litigation,[3] regarding the reasonableness of 33 1/3% of the settlement amount sought as attorneys' fees. According to the witness's testimony, his current billable rate is $335 per hour; new associates bill around $200 per hour; and paralegals generally bill $150 per hour. He also stated that some attorneys handling complex litigation in this jurisdiction bill as much as $650 per hour; but he noted that, for work he performed for insurance companies, his billing rate was closer to $275 per hour. He further stated that contingency fees in Rhode Island normally ranged from 25% to 40%, more for "catastrophic" cases.

_____

[3]

With respect to the instant litigation, the attorney only reviewed the pending motions; he did not review the Complaint or any other related documents or correspondence.

## III. Discussion

(A) Class Action Settlement

Pursuant to Federal Rule 23(e) of the Federal Rules of Civil Procedure, if a proposed settlement "would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); City P'ship Co. v. Atlantic Acquisition Ltd., 100 F.3d 1041, 1043 (1st Cir. 1996)("A district court can approve a class action settlement only if it is fair, adequate and reasonable."). When considering a motion for final approval for a class settlement, the Court must conduct a detailed assessment of the settlement terms, the class members' interests, the interests of other third parties that might be affected, and the circumstances of the litigation. Duhaime v. John Hancock Mut. Life Ins. Co., 183 F.3d 1, 2, 7 (1st Cir. 1999). See also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 805 (3d Cir. 1995)("Rule 23(e) imposes on the trial judge the duty of protecting absentees, which is executed by the court's assuring that the settlement represents adequate compensation for the release of the class claims.")

The First Circuit has noted that "[w]hen sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." City P'ship Co. v. Atlantic Acquisition Ltd., 100 F.3d at 1044. To assess the fairness of a settlement, case law offers a "laundry list of

8

factors," ultimately involving a decision by the trial judge "balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund, 582 F.3d 30, 44 n. 13 (1st Cir. 2009)(listing cases, including City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d. Cir. 1974)). The factors considered by other courts include (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. City of Detroit v. Grinnell Corp., 495 F.2d at 463.

In this case, the parties indicated, within four months of commencement of the litigation, that they believed the case could be settled. Within another two months, following a one day mediation session, a settlement was reached. Although some of the notified prospective class members have chosen to opt out, no

objections were raised against the settlement.[4] Affidavit of Settlement Administrator (Docket No. 38). Discovery in this case appears to have been minimal and primarily informal, and no dispositive motions were filed by either side. With respect to the likelihood of success, the Court notes that class counsel have been involved in litigation over TABS accounts in other jurisdictions, with varying success. See e.g. Mogel v. UNUM Life Ins. Co. of North America, 547 F.3d 23 (1st Cir. 2008)(settlement); Edmonson v. Lincoln Nat. Life Ins. Co., C.A. No. 10-4919, 102011 WL 1234889 (E.D.Pa. April 01, 2011)(defendant's motion for summary judgment granted); Luitgaren v. Sun Life Ins. Co. of Canada, C.A. No. 09-11410, 2010 WL 4722269 (D. Mass. Nov. 18, 2010)(defendant's motion for summary judgment pending); Otte ex rel. Estate of Reynolds v. Life Ins. Co. of North America, C.A. No. 09-11537, 2011 WL2307404 (D.Mass June 10, 2011)(motion to certify class partially GRANTED, pending interlocutory appeal); Faber v. Metro. Life Ins. Co, 648 F.3d 98 (2d Cir. 2011)(dismissal of case by district court affirmed).

In the course of this litigation, class counsel indicated to the Court that the alleged damages were estimated at $5 Million,

---

[4] The Court expressed its great concern at the final hearing that class counsel apparently neglected to inform the Settlement Administrator that individuals indicating their wish to opt out were not to be contacted for a follow-up by telephone, as the Court had expressly instructed.

whereas the Defendants maintained that their profit gained from the TABS account was limited to $2 Million. As such, a $1.9 Million recovery, or slightly less than 40% of the asserted damages, is not unusual as a settlement amount. The settlement payments are structured to compensate each individual class member in proportion to the loss sustained from the Defendants' TABS practices. According to Mutual of Omaha, the TABS practice was discontinued in May 2009 with respect to new account holders. The notice to the settlement class explicitly advises current holders of TABS accounts that, in the future, they will not be able to sue Mutual of Omaha for profits on the TABS account program.

In light of these facts, when reviewed against the Grinnell factors, the Court concludes that this is a good settlement which was achieved at an arm's length negotiation with the services of a mediator. The Court is also satisfied that all of the interested parties in this case, *i.e.* the prospective class members, have been appropriately and properly notified of this action and that they have been adequately apprised of their rights as beneficiaries and potential litigants.

(B) Attorneys' Fees

In class action cases, attorney fees may be awarded from a common fund created for the benefit of the class. Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or

by the parties' agreement"); United States v. 8.0 Acres of Land, 197 F.3d 24, 33 (1st Cir. 1999). A trial court has considerable discretion when awarding attorney fees. Lipsett v. Blanko, 975 F.2d 934, 937 (1st Cir. 1992); Kargman v. Sullivan, 589 F.2d 63, 69 (1st. Cir.1978)(common fund award "is an equitable award made at the discretion of the district court"); In re Fidelity/Micron Sec. Litig., 167 F.3d 735, 737 (1st Cir.1999)(noting that "because each common fund case presents its own unique set of circumstances, trial courts must assess each request for fees and expenses on its own terms"). The Court takes a quasi-fiduciary role in protecting the common fund for the benefit of the class in awarding attorney fees. Id. at 736-737.

The Court may calculate such an award by using a lodestar method and multiplying a reasonable hourly rate by the compensable hours the attorney worked on the matter or it may base the fees on a reasonable percentage of the fund. In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire, 56 F.3d 295, 307, 309 (1st Cir.1995)("A court arrives at the lodestar by determining the hours productively spent on the litigation and multiplying those hours by reasonable hourly rates"); Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 13 (1st Cir. 2011)(noting that "[w]hen fashioning a fee award, the district court ordinarily starts by constructing what has come to be known as the lodestar"). Although there are some advantages to the percentage of fund method, *i.e.*

"it is less burdensome to administer, it reduces the possibility of collateral disputes, it enhances efficiency throughout the litigation, it is less taxing on judicial resources, and it better approximates the workings of the marketplace," Lupron Mktg. and Sales Practices Litig., No. MDL 143001-CV-10861 RGS, 2005 WL 2006833 *3 (D. Mass. Aug. 17, 2005)(citing In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litigation, 56 F.3d at 307, the Court is also mindful of the mandate to protect the common fund for the benefit of the 6,800 class members in this case. In re Fidelity/Micron Sec. Litig., 167 F.3d 736.

While the First Circuit has not established specific factors to assess a common fund fee request, district courts in this circuit have considered the factors in Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000), including (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. See, e.g., In re Lupron Mktg. and Sales Practices Litig., 2005 WL 2006833 at *3 (considering (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and

(7) public policy considerations, if any.)

In this case, class counsel seek $633,333 in attorneys' fees, or 33 1/3% of the total $1.9 Million settlement amount. Their total lodestar amount through December 31, 2011 is $368,940. An additional amount of $50,550 is estimated for administrative matters in February and March 2012. Counsel assert that a 1.55 multiplier (applied to the anticipated total lodestar of $409,357) is fair and reasonable, given the significant recovery, the complexities and challenges of the litigation, and the risks in undertaking it. Pltf.'s Mem. 1 (Docket No. 31-1).

When considering the circumstances and facts of this particular litigation, the Court comes to the conclusion that a lodestar approach will result in fair and reasonable compensation for class counsel. First, the case settled within weeks, without any significant discovery[5]. The complaint was filed in November 2010; the parties participated in a Rule 16 conference in March 2011; and, within 60 days of that conference, the parties reported that they were ready to settle. Since then, the parties have primarily been engaged in preparing the settlement documents, including perfecting the requisite notice to the proposed class members. No interrogatories were exchanged, no depositions were

_____

[5]

Plaintiffs' counsel disclosed that some of the financial information pertaining to the Defendants was obtained by downloading publicly available statements from the internet. In addition, the Defendants apparently provided a spreadsheet regarding the interest "spread" related to the TABS accounts.

14

noted, no trial preparations were undertaken, and class certification, which was limited to the settlement only, was unopposed. The only motions filed in this case related to approval of the settlement and the request for attorneys' fees, costs, and an incentive award for the named plaintiff. The Court also notes that counsel for the plaintiff has documented spending a total of 762 hours (with an estimate of an additional 98 hours until completion of the action) on a case that appears to involve identical issues addressed in other cases prepared by some of the same attorneys. Based on the effort expended in these essentially unopposed proceedings, it would appear that the attorneys will be sufficiently compensated by receiving their considerable hourly rates, which adequately reflect their expertise in similar litigation.

Second, there is nothing particularly complex about the case, which primarily raises the question of whether the insurance companies' practice of "skimming" some of the interest from TABS accounts constitutes a violation of their fiduciary duties under ERISA.

Third, although litigation always carries with it a risk of a less than favorable outcome, counsel have had some success in bringing similar cases and might have been successful in obtaining maximum recovery for the class if this case had proceeded to trial. Counsel also acknowledged that the instant litigation was filed

after a similar litigation in Mogel had already resulted in a successful settlement.

Fourth, it is evident that counsel are experienced and well qualified, which is reflected in their reported billing rates varying between $425 and $525 per hour.

Fifth, with respect to requested fees amounting to a full third of the common fund, this seems to be a significant award to a select number of attorneys who have brought these cases in a number of other jurisdictions, in light of the projected award - an average of $180 - to individual class members. A common fund of $1.9 million for estimated losses of $5 million does not constitute an undeserved windfall to the settlement class, which will receive less than 40% of its alleged losses.

Finally, regarding public policy, it is appropriate for the Court to consider counsel fees in class action settlements with particular care, since the request for settlement fees is not contested by the Defendants and a percentage of common fund award may result in an award of attorneys' fees far in excess of compensation at a reasonable billable rate.

For those reasons, the Court sees no compelling reason to multiply the lodestar figures with a 1.55 factor. Therefore, approval of attorneys' fees is limited to the compensation for the actual work performed in this litigation. Counsel are expected to provide detailed documentation for any work performed after January

1, 2012 in bringing this case to completion.

(C) Reimbursement of Expenses

It is well established in the First Circuit that "in situations in which expenses are potentially reimbursable, district courts enjoy wide latitude in shaping the contours of such awards." In re Fidelity/Micron Sec. Litig., 167 F.3d at 736 (citing In re Thirteen Appeals-San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d at 309). However, in "common fund" cases, the district court is called upon to act as a "quasi-fiduciary to safeguard the corpus of the fund for the benefit of the plaintiff class." In re Fidelity/Micron Sec. Litig., 167 F.3d at 736-37 (citing Cook v. Niedert, 142 F.3d 1004, 1011 (7th Cir.1998)). The award of expense reimbursement is subject to the Court's "informed discretion," guided by the principle of reasonableness and based on an individualized assessment of each request. In re Fidelity/Micron Sec. Litig., 167 F.3d at 737.

Class counsel in this case seek reimbursement of actual costs of $10,132.91 incurred through December 31, 2011, plus estimated expenses of $1,400.00 incurred from January 1, 2012 to the completion of the case. The sum represents filing fees, the cost of mediation, travel expenses, including airfare and overnight stays, out-of-pocket fees for computerized legal research, printing and other minor expenses. A review of class counsel's itemized expense sheet reveals that the largest line item is the mediator's

fee of $3,750 and that travel in this case was limited to class counsel attending the mediation or participating in a proceeding before this Court. (Docket No. 33-1). As such, the Court concludes that the expenses related to this litigation are reasonable and that an award of reimbursement is appropriate.

(D) Incentive Award

Finally, class counsel seek a $5,000 "incentive award" for Baptista's involvement in bringing this action. An incentive award to a named plaintiff "can be appropriate to encourage or induce an individual to participate" in a class action. In re Puerto Rican Cabotage Antitrust Litig., — F. Supp.2d —, 2011 WL 4537726 (D.P.R, Sept. 13, 2011). The purpose of incentive awards is "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation." In re Lorazepam & Clorazepate Antitrust Litig., 205 F.R.D. 369, 400 (D.D.C. 2002).

According to the declaration submitted in support of her request for an incentive award, Baptista estimates that she spent approximately 15-20 hours attending to matters involving this litigation. (Docket No. 37). She states that she participated in a meeting with counsel prior to the filing of the complaint and that she was kept informed by local counsel regarding the progress of the litigation. As previously noted, within four months after commencement of this litigation, the parties were focused entirely

18

on settlement. Baptista was not required to answer interrogatories or testify at a deposition. Baptista chose not to attend the sole public hearing on her motion for final approval of the class settlement. When viewed against the average amount of $180 anticipated to be awarded to approximately 6,800 class members,[6] Baptista's limited involvement does not warrant an award that far exceeds that of other class members. Accordingly, the Court finds that an award of $2,000 is adequate compensation for Baptista's time and effort in this litigation.

## Conclusion

For the reasons stated above, the Plaintiffs' motion for final approval of class settlement agreement is GRANTED; the motion for approval of attorney's fees and costs is GRANTED as specified herein, and DENIED otherwise; the motion for reimbursement of expenses is GRANTED; and the motion for an incentive award for Baptista is GRANTED as specified herein, and DENIED otherwise.

SO ORDERED.

/s/ Mary M. Lisi

Mary M. Lisi

Chief United States District Judge

March 14, 2012

---

[6]

The Court is mindful that a mathematical average does not reflect that the individual awards will be based on the profits of which each class member was deprived. No information was provided as to the estimated amount of Baptista's alleged loss.